IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ISACA, INC.,<br><br>   Plaintiff,<br><br>  v.<br><br>DQS CERTIFICATION INDIA PVT LTD.<br>and RAJENDRA KHARE,<br><br>   Defendants. | No. 1:22-cv-61 |

## **COMPLAINT**

Plaintiff ISACA, Inc. alleges as follows:

1. This suit seeks declaratory judgment and a judgment for breach of contract in relation to an agreement between Plaintiff Information Systems Audit and Control Association, Inc. (d/b/a ISACA) ("ISACA") and Defendant DQS Certification India Pvt. Ltd. ("DQS"). In the agreement, ISACA licensed DQS to use its proprietary process and behavioral model to perform appraisals in India for companies that desire to receive a certification of compliance with that model, including companies located in the United States, after which ISACA would review and approve, reject or audit the results prior to final certification. The agreement contains clear termination and dispute resolution provisions, which ISACA invoked in or about August-October 2021. DQS opposed ISACA's attempted termination of the agreement and then filed suit in India in clear violation of the plain dispute resolution provisions of the agreement.  ISACA seeks a declaratory judgment that it properly exercised its termination right under the agreement

and a judgment that DQS and KHARE breached the contract by filing suit under it in India.

## PARTIES

2.      ISACA is a California not-for-profit corporation with its principal place of business located at Schaumberg, Illinois.

3.      DQS is a company organized under the laws of India with its principal place of business in Pitampura, Delhi, India.

4.      Defendant Rajendra Khare ("KHARE") resides in and is a citizen of India and is the principal of DQS.

## JURISDICTION AND VENUE

5.      This Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332 because the amount in controversy exceeds $75,000, the plaintiff is a citizen of a State, i.e., Illinois, and the defendants are citizens of a foreign state, i.e., India.

6.      Venue is proper in this District because in Section 12.2 of the contract at issue in this case, DQS "consent[ed] to the exclusive jurisdiction of" the federal and state courts in this District and "waive[d] any objection which such party may have to the laying of venue in any such courts." Moreover, as alleged below, a substantial part of the events or omissions giving rise to the claims at issue herein occurred in this District and a substantial part of property that is the subject of the action is situated in this District.

## BACKGROUND

7.      ISACA owns a process and behavioral model called the Capability Maturity Model Integration (CMMI) that helps organizations effectuate process

improvement and develop behaviors that decrease risks in service, product, and software development. CMMI was originally created by the Software Engineering Institute (SEI). Thereafter, ISACA acquired all rights to CMMI, all CMMI partner and other agreements and all of CMMI's intellectual property.

8.     Organizations who wish to demonstrate to third parties that they comply with the CMMI methodology could seek certification from ISACA.  In order to obtain CMMI certification organizations must undergo an appraisal process ("CMMI Appraisal").  CMMI Appraisals can only be conducted by individuals that are certified by ISACA or its predecessors and are affiliated with a company that has entered into a license agreement with ISACA or its predecessors, which permits them to conduct CMMI Appraisals.   Such CMMI licensees are located around the world and are completely independent of ISACA other than their license relationship with ISACA. Once a CMMI licensee completes a CMMI Appraisal and submits it, ISACA then reviews the appraisal results and either approves them, or if ISACA identifies issues with the CMMI Appraisal, ISACA may reject the results and/or conduct an audit of the appraisal.

9.     Beginning in or about 2007, DQS contracted with ISACA or its predecessors to conduct CMMI appraisals under licensing agreements. From time-to-time, DQS and KHARE signed renewals and new contracts with ISACA or its predecessors to this effect.

10.     On or about October 20, 2020, DQS through KHARE executed a written contract with ISACA to conduct appraisals of companies that desire to receive a CMMI certification. The written contract is styled *License Agreement between ISACA and DQS*

*Certification India Private Limited* ("Contract") under which *inter alia* ISACA licensed

DQS (and KHARE) to perform CMMI appraisals and DQS agreed to various obligations

to ISACA.

11.     ISACA and KHARE continued to operate under the Contract from

October 20, 2020 to in or about October 2021.

12.     Subsection 8.2 of the Contract contains an unequivocal termination

provision, to wit:

> Termination. For any reason, either party may terminate this Agreement by
> delivering written notice to the other party in accordance with the provisions
> set forth in Section 11 below at least thirty (30) days prior to termination. If
> any party terminates this Agreement, it shall not be liable to the other party
> for any costs resulting from or related to the termination.

13.     In the event of a dispute, the Contract expressly affords ISACA the

exclusive right to determine whether the dispute will be resolved via arbitration or in a

court of law. In this regard, DQS and KHARE expressly agreed under Subsection 12.2 of

the Contract that neither shall have any right to determine where the dispute may be

resolved and specifically agreed that any dispute only could be resolved by arbitration or

court proceedings in Illinois (the Northern District of Illinois or Circuit Court of Cook

County) and no other location.

14.     Subsection 12.2 provides, in pertinent part:

> All claims and/or controversies of every kind and nature arising out of or
> relating to this Agreement, including any questions concerning … breach,
> continuance or termination shall be settled: (1) at ISACA's election, by
> binding arbitration administered by the American Arbitration Association
> ("AAA") …[with] all arbitration hearings conducted in Cook County
> Illinois …; or (2) in the event that ISACA does not elect binding arbitration
> as permitted in point (1) above, exclusively in the United States District
> Court for the Northern District of Illinois or, if such Court does not have
> jurisdiction, in any court of general jurisdiction in Cook County, Illinois and

4

each party consents to the exclusive jurisdiction of any such courts and waives any objection which such party may have to the laying of venue in any such courts.

15.     By the express terms of Subsection 12.2 of the Contract, DQS and KHARE specifically agreed that any dispute under the Contract shall be resolved in Illinois (the Northern District of Illinois or Cook County) and thus that DQS and KHARE did not have the right to file their own suit under the Contract in India or anywhere other than Illinois.

16.     On or about August 30, 2021, ISACA provided DQS (via KHARE) 30 days' notice that ISACA had opted to exercise its termination right under Section 8 of the Contract.

17.     On September 14, 2021, KHARE sent an email to a legal officer at ISACA invoking Subsection 12.2 of the Contract. KHARE queried, "in line with Para 12.2(1) of the Partnership Agreement, we would like to know whether ISACA would like to elect binding Arbitration administered by AAA as the Dispute Resolution Method. Please inform on an urgent basis. In case, we do not receive a reply by close of business today, we will assume, that ISACA will not like to elect binding Arbitration as administered by AAA as avenue for this Dispute Resolution."

18.     On September 15, 2021, counsel for ISACA thereafter notified KHARE that ISACA opted to exercise its right under the Contract to opt against arbitration and stated that DQS could litigate the dispute in the United States District Court for the Northern District of Illinois.

19.     On September 21, 2021, KHARE sent an email to ISACA styled "Complaint against ISACA CEO Mr. David Samuelson and ISACA Contract Signatory Mr. Steve Mole," which complaint KHARE sought to have "evaluated formally through

the **governance and complaints process** by the ISACA Board of Directors." (Emphasis in original.) KHARE then once again invoked Subsection 12.2 of the Contract, quoting it in full.

20.     In his September 21 email, KHARE complained about ISACA's choice to opt against arbitration, incorrectly asserting that as a foreign citizen DQS did not have the ability to bring suit in the United States District Court for the Northern District of Illinois:

> the Northern District Court of Illinois does not allow the foreign companies of other U.S. States [Provinces] and other Countries to bring and maintain a Civil Lawsuit. This is only allowed when foreign companies take Application for Admission [AOA] and subsequent Authorization from the Secretary of State [SOS] of Illinois, U.S.

21.     In so asserting, KHARE mistakenly relied upon an Illinois state law inapplicable in federal court. He cited to 805 ILCS 5/13.05-13.75, and asserted, "[t]he law of the State of Illinois is very clear: 'If a company is not admitted and authorized in the State of Illinois, it cannot bring or maintain a civil lawsuit in the State of Illinois.'"

22.     In a separate email dated September 21, 2021 to an ISACA executive, KHARE stated that he had been "directed to approach the court of Northern District of Illinois" and would be filing suit the next day. KHARE then asked the executive to intercede to suspend the notice of termination to allow a more fulsome review of the situation: "since I do not want to take the path of litigation, *I would request you to use your executive powers to provide an injunction on the Termination Notices*, to get time for any further deliberation, for any activities of the investigation committee…" [Emphasis in original.] KHARE then added that "in case, I am found at fault after due process of investigation and opportunity to be heard, I am willing to take any punishment, but not in this manner when I am deprived of all opportunities to be heard."

23.     On September 22, 2021, ISACA agreed to KHARE's request for an extension of the termination date. The next day, September 23, 2021, KHARE submitted a set of documents for ISACA's review. Upon receipt of the materials ISACA explained that it would use the time to review the materials KHARE provided and to investigate so long as KHARE and DQS refrained from conducting any new CMMI Appraisals under the Contract.

24.     On September 24, 2021, ISACA formally notified KHARE that it would reset the termination date of the Contract from September 30 to October 30, 2021. In so doing, ISACA specifically stated that the extension was conditioned upon KHARE not conducting any new CMMI Appraisals under the Contract and not violating the CMMI method or Code of Professional Conduct.

25.     On or about October 4, 2021 before the foregoing review could be completed, however, KHARE submitted to the ISACA Board Chair and Members a document styled *Appeal for protection against retaliation under the whistleblower policy of ISACA and withdrawal of Termination Notices with immediate effect*. In the document, KHARE lodged numerous allegations against the executive who had agreed to provide an extension.

26.     On October 7, 2021, KHARE sent ISACA an "advance copy" of a civil suit he represented he intended to file against ISACA in India seeking Indian government action against ISACA seeking to enjoin ISACA from all CMMI certification activity in India.

27.     A review of the issues KHARE raised as well as additional information obtained by ISACA, did not alter ISACA's original position and in fact reinforced it.  As

7

a result, on October 12, 2021, ISACA's counsel notified KHARE and DQS that ISACA rescinded the extension and termination of the Contract was effective immediately.

28. On or about November 26, 2021, KHARE caused DSQ to file a suit against ISACA in the Delhi High Court, New Delhi, India, raising claims under the Contract, including challenging ISACA's termination of DSQ. In the suit, DSQ (through KHARE) sought the following relief from the Delhi High Court:

> pass an order of mandatory injunction to restore the status quo as it existed on 29.08.2021 [last non-contested status], prior to the issuance of Termination Notice on 30.08.2021.

29. Along with the suit, DSQ (through KHARE) also filed an application seeking the following interim relief from the Delhi High Court:

> pass an order of Temporary Mandatory Injunction on ad-interim basis to restore the status quo as it existed on 29.08.2021 [last non-contested status], prior to the issuance of Termination Notice on 30.08.2021.

30. In the suit, KHARE has misleadingly claimed that the Delhi High Court should exercise jurisdiction to adjudicate the dispute since DSQ did not have the ability to bring suit in the United States District Court for the Northern District of Illinois. In so asserting, KHARE has once again incorrectly relied upon an Illinois state law inapplicable in federal court.

31. Thus, it is evident that KHARE has wrongly brought proceedings before the Delhi High Court when it has consented to the jurisdiction of this Court. Moreover, a review of the claim before the Delhi High Court would show that the issues sought to be raised are identical to the issues ISACA is raising before this Court.

32. ISACA specifically and repeatedly notified DQS and KHARE that pursuant to ISACA's election under Subsection 12.1 of the Contract, DQS and KHARE

must bring any action regarding a dispute under the Contract in United States District Court for the Northern District of Illinois.

33.    Nevertheless, DQS and KHARE filed suit under the Contract in the Delhi High Court in New Delhi, India, knowing and having reason to know that doing so materially breached the terms of the Contract.

## COUNT ONE

## DECLARATORY JUDGMENT

34.    Plaintiff ISACA realleges and incorporates by reference the allegations in paragraphs 1 through 33 of this Complaint.

35.    On or about October 20, 2020, DQS (by and through KHARE) entered into a binding contractual agreement with ISACA styled *License Agreement between ISACA and DQS Certification India Private Limited*, which each party duly accepted after and under which each party received adequate consideration.

36.    Among the terms of the Contract to which both parties agreed were the terms under Subsection 8.2 permitting termination for any reason by either party upon 30 days' notice. Such a mutual termination provision is the essence of due consideration.

37.    On or about August 30, 2021, ISACA provided DQS (via KHARE) 30 days' notice that ISACA had opted to exercise its termination right under Section 8 of the Contract.

38.    Thereafter, DQS and KHARE repeatedly represented that they wished to contest ISACA's exercise of its termination right. In so doing, an actual controversy arose and continues to exist between the parties, including without limitation the

9

construction of the Contract and ISACA's right to terminate the Contract by means of the notice it afforded DQS.

39.     Subsection 12.2 of the Contract provides that in the event of a dispute: (1) resolution must be sought in Cook County (in the case of an Arbitration) or in the Northern District of Illinois or Cook Country (in the case of a judicial determination; and (2) ISACA shall have the exclusive right to determine whether the dispute would be heard, i.e., in arbitration in the Northern District of Illinois or in the Cook Country courts (if federal court is not available).

40.     ISACA opted for resolution in the Northern District of Illinois. DQS and KHARE expressly recognized that ISACA had made this election. Nevertheless, KHARE caused DQS to bring suit under the Contract in India against ISACA's invocation of its right under the Contract. Accordingly, an actual controversy arose and continues to exist between the parties, including without limitation the construction of the Contract and DQS's right to bring suit in India.

41.     Pursuant to 28 U.S.C. § 2201, ISACA seeks a declaratory judgment that: (a) the current dispute under the Contract must be adjudicated in this Court and not in India; and (b) ISACA properly terminated the Contract under Section 8.

## COUNT TWO

### BREACH OF CONTRACT

42.     Plaintiff ISACA realleges and incorporates by reference the allegations in paragraphs 1 through 41 of this Complaint.

43.     A dispute had arisen between ISACA and DQS under the Contract. Under Subsection 12.2 of the Contract, ISACA has the exclusive right to determine where the

dispute will be heard. DQS and KHARE repeatedly recognized that Subsection 12.2 controlled this question.

44. ISACA communicated to DQS and KHARE that the dispute should be brought in the Northern District of Illinois.

45. Nevertheless, DQS and KHARE brought suit under the Contract in the Delhi High Court in New Delhi, India.

46. By this action, DQS and KHARE materially breached Section 12.2 of the Contract, causing ISACA to be damaged, including money damages that continue to accumulate.

## PRAYER FOR RELIEF

ISACA prays for relief as follows:

1. For the declaratory judgment requested above:

   a. A declaratory judgment that the current dispute under the Contract must be adjudicated in this Court and not in India; and

   b. A declaratory judgment that ISACA properly terminated the Contract under Section 8.

2. For the breach of contract alleged above, a finding and judgment that DQS CERTIFICATION INDIA PVT LTD. and RAJENDRA KHARE breached Section 12.2 of the Contract by filing suit in the Delhi High Court to cause their dispute with ISACA regarding the Contract to be adjudicated in India in direct contravention of Section 12.2 of the Contract.

3. For monetary relief to be determined at trial, but in any event of a value in excess of $75,000.

4.  For such other and further relief as the Court deems just and proper.

Dated:  January 5, 2022

Respectfully submitted,

ISACA, Inc.

By: */s/ Scott Mendeloff*

GREENBERG TRAURIG, LLP
Scott Mendeloff
Marc Trachtenberg
Gabriel Aizenberg
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-8400
Firm ID No. 36511
mendeloffs@gtlaw.com
trachtenbergm@gtlaw.com
aizenbergg@gtlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 5, 2022, a copy of a true and correct copy was served on the below parties by email pursuant to Federal Rules of Civil Procedure, Rule 4(f):

Rajendra Khare
501 Best Sky Tower F-05,
Netaji Subhash Place
Pitampura, Delhi – 110034, India

DQS Certification India Pvt. Ltd
510 Best Sky Tower F-05,
Netaji Subhash Place
Pitampura, Delhi – 110034, India

By: */s/ Scott Mendeloff*

GREENBERG TRAURIG, LLP
Scott Mendeloff
Marc Trachtenberg
Gabriel Aizenberg
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-8400
Firm ID No. 36511
mendeloffs@gtlaw.com
trachtenbergm@gtlaw.com
aizenbergg@gtlaw.com

*Attorneys for ISACA, Inc.*