IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Information Systems Audit and Control Association, Inc. d/b/a ISACA, | |
| Plaintiff, | Case No. 22-cv-00061 |
| DQS Certification India Pvt. Ltd. and Rajendra Khare, | Honorable LaShonda A. Hunt |
| Defendants.[1] | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Information Systems Audit and Control Association, Inc. ("ISACA") filed suit against Defendants DQS Certification India Pvt. Ltd. and Rajendra Khare, seeking, among other things, a judgment that ISACA properly exercised its contract termination rights and Defendants breached the agreement by separately filing suit in India. (SAC ¶ 1). Before the Court is Khare's motion to stay this action [59] pending resolution of a foreign proceeding and confirmation of ISACA's authority to proceed with this action.[2] (Mot. to Stay, Dkt. No. 59). For the reasons stated below, Khare's motion is denied.

**BACKGROUND**

ISACA is a California not-for-profit corporation that "owns a process and behavioral model called the Capability Maturity Model Integration (CMMI)[.]" (SAC ¶¶ 2, 7). CMMI "helps

---

[1] Although the caption of the Second Amended Complaint designates "ISACA, Inc." as Plaintiff and omits the period after "Pvt", the Court modifies the caption to reflect Plaintiff's full name and include the period after "Pvt.", both as set forth in the body of the pleading. (*See* 2d Am. Compl. ("SAC") ¶ 1, Dkt. No. 90). In addition, because ISACA alleges that Khare is the alter ego of DQS, the Court will refer to both collectively as "Defendants" when describing action allegedly taken either by both or by Khare as DQS's alter ego.

[2] Khare also sought to stay this case pending resolution of his appeal the order granting Plaintiff's motion for electronic service of process under Federal Rule of Civil Procedure 4(f)(3). (Order, Dkt. No. 26). This argument is denied as moot because the Seventh Circuit dismissed the appeal. *ISACA v. Khare*, No. 22-2966, slip op. at 1 (7th Cir. Feb. 17, 2023) (dismissing for lack of jurisdiction over an interlocutory order).

1

organizations effectuate process improvement and develop behaviors that decrease risks in service, product, and software development." (*Id.* ¶ 7). Organizations wishing to demonstrate compliance with CMMI methodology seek certification through an appraisal process. (*Id.* ¶ 8). In turn, ISACA enters into license agreements with affiliates certified to conduct such appraisals. (*Id.*).

Starting in approximately 2007, the parties entered into a series of license agreements that permitted Defendants to conduct CMMI appraisals. (*Id.* ¶ 9). Most recently, the parties executed the written license agreement dated October 20, 2020, which is the subject of this dispute. (*Id.* ¶ 10; SAC Ex. 1, Dkt. No. 90-1). In addition to setting forth the parties' respective rights and obligations, the agreement provides, in pertinent part, as follows:

> 8.2 Termination. For any reason, either party may terminate this Agreement by delivering written notice to the other party in accordance with the provisions set forth in Section 11 below at least thirty (30) days prior to termination. If any party terminates this Agreement, it shall not be liable to the other party for any costs resulting from or related to the termination.
>
> ***
>
> 12.2 Governing Law. This Agreement shall be governed by the laws of the state of Illinois without regard to its conflicts of laws provisions. All claims and/or controversies of every kind and nature arising out of or relating to this Agreement, including any questions concerning . . . breach, continuance or termination shall be settled: (1) at ISACA's election, by binding arbitration administered by the American Arbitration Association ("AAA") . . . ; or (2) in the event that ISACA does not elect binding arbitration as permitted in point (1) above, exclusively in the United States District Court for the Northern District of Illinois or, if such Court does not have jurisdiction, in any court of general jurisdiction in Cook County, Illinois and each party consents to the exclusive jurisdiction of any such courts and waives any objection which such party may have to the laying of venue in any such courts.

(SAC Ex. 1 at 10, 12).

On August 30, 2021, ISACA provided Defendants 30 days' notice of termination under section 8.2 of the agreement. (SAC ¶ 17). Subsequently, the parties exchanged several

2

communications and ISACA conducted a review regarding the termination. (*Id.* ¶¶ 18-27). On September 15, 2021, ISACA informed Defendants that it opted against arbitration and the dispute could be litigated in the United States District Court for the Northern District of Illinois. (*Id.* ¶ 19). Ultimately, the parties were unable to resolve their dispute. On October 12, 2021, ISACA notified Defendants that the agreement was terminated effective immediately. (*Id.* ¶ 27).

Despite the contract's forum selection clause and the parties' communications, on November 26, 2021, Defendants filed suit in India seeking to enjoin ISACA from terminating the contract.[3] (*Id.* ¶ 28). Soon afterwards, on January 5, 2022, ISACA commenced this case by filing its original complaint. (Compl., Dkt. No. 1). Over a year later, on January 10, 2023, Khare filed the motion to stay that is presently before the Court. According to Khare, the Court should stay this case pending (1) resolution of the Indian contract case under the principle of "international comity", and (2) confirmation that ISACA has authority to engage in this litigation.

## DISCUSSION

### I. Stay Pending Resolution of Indian Case

The principle of "international comity" is "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of own citizens, or of other persons who are under the protection of its laws." *Basic v. Fitzroy Eng'g, Ltd.*, 132 F.3d 36 (Table), No. 97-1052, 1997 WL 753336, at *8 (7th Cir. Dec. 4, 1997) (quoting *Hilton v. Guyot,* 159 U.S. 113, 164 (1895)). In certain cases, American courts recognize that the exercise of jurisdiction would be

---

[3] The Indian contract case is designated as C.S. (COMM) No. 611 of 2021, *In the Matter of: DQS Certification India v. ISACA*, in the High Court of Delhi at New Delhi, India. Defendants also filed a second suit in the same Indian court, Writ Petition (Civil) No. 309 of 2023, *In the Matter of: Rajendra Khare v. Union of India*, seeking to challenge the propriety of electronic service in this case. The latter proceeding is not at issue in this opinion.

inappropriate under the international comity principle. *Daimler AG v. Bauman*, 571 U.S. 117, 140-42 (2014) (noting that risks to international comity weighed against the exercise of jurisdiction over a claim brought by foreign plaintiffs against a foreign defendant based on events occurring entirely outside the United States). However, international comity is not without limits. *See, e.g., Hilton,* 159 U.S. at 163-64 (1895) ("'Comity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other.").

Relevant here, concerns of international comity generally subside where the parties have previously agreed to resolve legal disputes in a particular forum. *See E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 994 (9th Cir. 2006) (stating that "where private parties have previously agreed to litigate their disputes in a certain forum, one party's filing first in a different forum would not implicate comity at all."); *Fellowes, Inc. v. Changzhou Xinrui Fellowes Off. Equip. Co. Ltd.*, 11 C 6289, 2012 WL 3544841, at *6-7 (N.D. Ill. Aug. 16, 2012) (observing that "the important public policy of protecting forum selection clauses prevails over any concerns regarding international comity."), *vacated on other grounds*, 759 F.3d 787 (7th Cir. 2014); *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 130 (S.D.N.Y. 1997) (rejecting motion to stay because parties agreed to a forum selection clause naming the domestic court as the proper forum and the enforcement of forum selection clauses is an "important public policy"), *aff'd sub nom., Farrell Lines Inc. v. Ceres Terminals Inc.*, 161 F.3d 115 (2d Cir. 1998).

The cases prioritizing forum selection clauses over international comity are consistent with the Supreme Court and Seventh Circuit's historical treatment of international forum selection clauses. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) ("[W]e conclude that the forum clause should control absent a strong showing that it should be set aside. *** The correct approach [is] to enforce the forum clause specifically unless [the defendant] could clearly show

4

that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."); *1st Source Bank v. Neto*, 861 F.3d 607, 612 (7th Cir. 2017) ("international forum-selection clauses are prima facie valid, especially when freely negotiated between private parties."); *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 525 (7th Cir. 2001) ("a forum selection clause is presumptively valid and enforceable unless (1) '[its] incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court; or (3) [its] enforcement . . . would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision.'") (quoting *Bonny v. Society of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993) (internal citations and quotation omitted)). If it were otherwise, "any party seeking to evade the enforcement of an otherwise-valid forum selection clause need only rush to another forum and file suit." *E. & J. Gallo*, 446 F.3d at 994. Thus, it would not be appropriate to stay this case under the principle of international comity if the forum selection clause at issue is valid on its face.

In support of Khare's request for a stay, he relies primarily on *Basic v. Fitzroy*, in which the Seventh Circuit found that the "[international comity] doctrine compel[led] the court to decline the exercise of jurisdiction [over a] declaratory action and, instead, defer to New Zealand's own court the requested jurisdictional and legal determinations." 1997 WL 753336, at *6-9. As Plaintiff points out, however, that case did not involve a forum selection clause. As such, cases where courts considered both international comity and forum selection clauses are more relevant. *See E. & J. Gallo*, 446 F.3d at 994 (instructing district court to grant motion for anti-suit injunction against the defendant because the parties had agreed to a forum selection clause, so comity was not implicated); *Fellowes*, 2012 WL 3544841, at *6-7 (issuing antisuit injunction, in part, because

5

there were "no significant issues of international comity present" and "the important public policy of protecting forum selection clauses prevails over any concerns regarding international comity."); *Farrell Lines*, 32 F. Supp. 2d at 130 (rejecting motion to stay during pendency of Italian proceeding because enforcing the parties' agreement to litigate in a particular court is an "important public policy").

Khare attempts to distinguish those cases, claiming that *Gallo*, *Fellowes*, and *Farrell* all involved *valid* forum selection clauses, while his case does not. Khare further argues that *Daimler AG v. Bauman,* 571 U.S. 117 (2014), is more relevant because the case stands for the proposition that the "United States Supreme Court supports the international comity principle and [has] passed judgments that deny the uninhibited exercise of raw judicial power over parties." (Reply ¶ 28, Dkt. No. 69). Although the parties' approach to this particular issue is unusual,[4] the Court will analyze the issue as it has been presented. Thus, the Court must first determine whether the forum selection clause is valid on its face, and if so, whether it would be inappropriate to stay this case under the international comity principle.

Although Khare contests the enforceability and validity of the forum selection clause for various reasons, nothing presently in the record causes the Court to question its facial validity. As discussed above, courts in this circuit consider forum selection clauses to be presumptively valid and enforceable absent (1) fraud, undue influence, or uneven bargaining power; (2) difficulty and inconvenience to the complaining party such that it would be deprived of its day in court; or (3) strong countervailing public policy of the alternate forum. *AAR Int'l*, 250 F.3d at 525; *1st Source Bank*, 861 F.3d at 612.

---

[4] Generally, when a party seeks to stay a domestic proceeding in favor of a foreign proceeding, the request is characterized as a motion for abstention, which is governed by the *Colorado River* doctrine and its progeny. *See AAR Int'l*, 250 F.3d 510 (citing *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 817 (1976)).

6

Khare does not dispute that the parties agreed to an express clause selecting this court as the forum for settling disputes arising from the agreement. Nor does Khare claim that the contract or clause were the result of fraud, undue influence, or uneven bargaining power. *See Bremen*, 407 U.S. at 10 ("There are compelling reasons why a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power, such as that involved here, should be given full effect . . . ."). Rather, Khare's primary argument against the forum selection clause is based on this court being "unavailable" to him—essentially a *forum non conveniens* argument. The Seventh Circuit has firmly rejected this position, however, when the party has previously agreed to resolve legal dispute in a particular forum. *See Abbott Labs. v. Takeda Pharm. Co. Ltd.,* 476 F.3d 421, 426 (7th Cir. 2007) ("When it signed the . . . agreement, Abbott . . . could and no doubt did consider the potential inconvenience of litigating in Japan . . . but decided to risk it. It is bound by its choice."); *AAR Int'l,* 250 F.3d at 526 ("by agreeing to a mandatory forum selection agreement, a party waives objections to venue in the chosen forum on the basis of cost or inconvenience to itself.") (citing *Nw. Nat'l. Ins. Co. v. Donovan*, 916 F.2d 372-78 (7th Cir. 1990)). For this reason alone, Khare's objection to the forum selection clause based on inconvenience or unavailability must be rejected.

The additional grounds that Khare provides in support of his unavailability argument are also without merit. Khare apparently believes that any claim filed in this forum would have been dead on arrival due to lack of jurisdiction or certain defenses ISACA might raise. Specifically, Khare asserts that federal court was unavailable because the contract limits his damages to $30,000, which falls under the amount in controversy requirement for diversity jurisdiction. This argument is a nonstarter because the contract clearly contemplates the filing of an action in state court if the federal court lacks jurisdiction. (*See* SAC Ex. 1 at 12 ("All claims and/or controversies

of every kind and nature arising out of or relating to this Agreement . . . shall be settled . . . exclusively in the United States District Court for the Northern District of Illinois or, *if such Court does not have jurisdiction, in any court of general jurisdiction in Cook County, Illinois…*") (emphasis added)). Khare also argues that this forum was unavailable to him because any claim Defendants filed against ISACA would have been subject to a "lack of capacity" defense under the Illinois Business Corporation Law. *See* 805 ILCS 5/13.05, 13.70, 13.75. Although Khare did not fully develop or explain this point, it does not matter because one of the provisions he cites expressly permits out-of-state businesses to participate in legal proceedings. *See* 805 ILCS 5/13.75 ("a foreign corporation shall not be considered to be transacting business in this State, for purposes of this Article 13, by reason of carrying on in this State any one or more of the following activities: (1) maintaining, defending, or settling any proceeding[.]"). Therefore, the Court concludes that Khare has not provided any basis to determine that the forum selection clause is not valid on its face.

That finding does not end the Court's inquiry, however, because Khare raised several other related arguments in support of staying this case under the international comity principle. First, Khare places great importance on the fact that he filed the Indian contract case first. However, courts generally disregard the order in which the cases are filed when there is a valid forum selection clause. *See E. & J. Gallo*, 446 F.3d at 994 (discounting the fact that the foreign case had been filed first because "any party seeking to evade the enforcement of an otherwise-valid forum selection clause need only rush to another forum and file suit. Not only would this approach vitiate United States policy favoring the enforcement of forum selection clauses, but it could also have serious deleterious effects for international comity."). Second, Khare claims that this case should be stayed because ISACA has submitted itself to the Indian court's jurisdiction. Specifically,

8

Khare refers to an email in which ISACA's counsel stated: "Additionally, should you libel or defame ISACA, the organization will exercise all available legal remedies against you in the US and Indian courts including, but not limited to, seeking monetary damages and injunctive relief." (Mot. to Stay ¶ 16 & Ex. 4 (10/12/21 Email)). Clearly, the scope of counsel's statement goes well beyond this proceeding and in no way, expressly or otherwise, waives any jurisdictional arguments with respect to this case. Finally, Khare claims that Indian law may prohibit this second-filed case under the circumstances. Again, the order in which the cases were filed is not a consideration here because of the presence of the forum selection clause.

Accordingly, Khare's request to stay this case pending resolution of the Indian contract case under the international comity is denied. Because Khare has not provided any basis to question the facial validity of the forum selection clause, a stay would be inappropriate. In addition, none of the other arguments presented by Khare compel the Court to stay this case in favor of the Indian proceedings.

## II. Stay Pending Confirmation of ISACA's Authority

The Court also rejects Khare's argument that this case should be stayed until ISACA's authority to continue this litigation is confirmed. According to Khare, ISACA's board and current CEO must authorize the continuation of this proceeding because the matter was originally authorized by ISACA's former CEO. Although Khare's motion fails to cite any authority in support of this position, his reply refers to Comment 3 to Illinois Rule of Professional Conduct 1.2, which governs the scope of representation and allocation of authority between client and lawyer. Ill. R. Prof'l Conduct 1.2 cmt. 3 (2010) ("At the outset of a representation, the client may authorize the lawyer to take specific action on the client's behalf without further consultation. Absent a material change in circumstances and subject to Rule 1.4, a lawyer may rely on such an advance authorization. The client may, however, revoke such authority at any time."). Putting

9

aside whether a third-party adversary has standing to invoke a rule that governs the relationship between a client and its attorney, the argument fails because the rule does not require a party to submit any proof of authorization to the Court or opposing parties in litigation. Furthermore, under Federal Rule of Civil Procedure 11, by filing signed documents in this case, ISACA's counsel implicitly makes certain representations to the Court, including the representation that each filing is not being presented for any improper purpose. Filing documents on a client's behalf without authority would certainly fall into that category. The Court has no reason to question whether counsel has fulfilled its obligations under Rule 11. As such, because Khare has failed to cite any applicable law requiring ISACA to verify its authority to engage in this litigation, his request to stay the case for that reason is also denied.

## CONCLUSION

For the reasons stated above, Khare's motion to stay is denied.

**DATED**: October 26, 2023

**ENTERED**:

_LaShonda A. Hunt_
LaShonda A. Hunt
United States District Judge